[910 NYS2d 149]

In the Matter of ANNETTE P. RICHARDSON, Respondent, v DOROTHY E. RICHARDSON, Appellant. (Proceeding No. 1.)

In the Matter of ANDREW G. HOURIE, Respondent, v DOROTHY E. RICHARDSON, Appellant. (Proceeding No. 2.)

In the Matter of AARON J. HOURIE, Respondent, v DOROTHY E. RICHARDSON, Appellant. (Proceeding No. 3.)

In the Matter of DOROTHY E. RICHARDSON, Appellant, v ANDREW G. HOURIE, Respondent. (Proceeding No. 4.)

In the Matter of DOROTHY E. RICHARDSON, Appellant, v ANNETTE P. RICHARDSON, Respondent. (Proceeding No. 5.)

In the Matter of DOROTHY E. RICHARDSON, Appellant, v AARON J. HOURIE, Respondent. (Proceeding No. 6.)

Second Department, November 3, 2010

**APPEARANCES OF COUNSEL**

*Homer W. Richardson*, Brooklyn, for appellant.

*William A. Sheeckutz*, Massapequa, for Annette P. Richardson, respondent.

*Steven A. Feldman*, Uniondale, for Andrew G. Hourie, respondent.

*Joseph P. Abbenda*, Glen Cove, for Aaron J. Hourie, respondent.

## OPINION OF THE COURT

LEVENTHAL, J.

█ The principal issue presented on these appeals, which appears to be one of first impression for an appellate court in this state, is whether the Family Court has subject matter jurisdiction over family offense proceedings where the alleged acts occurred outside of the state and even outside of the country. We hold that Family Court Act § 812 grants the Family Court subject matter jurisdiction to hear such proceedings and that the Family Court properly exercised jurisdiction over the parties' petitions, despite the fact that the acts alleged occurred on the island territory of Anguilla.

On March 4, 2009, Annette P. Richardson and her sons Aaron J. Hourie and Andrew G. Hourie (hereinafter collectively the respondents) filed three separate family offense petitions seeking the entry of orders of protection in favor of them and against Dorothy E. Richardson (hereinafter the appellant), Annette's mother, and her sons' grandmother. The alleged family offenses included, inter alia, assault, harassment, and menacing. In their respective petitions, the respondents described how they were related to the appellant and asserted that the parties all resided together in a home in Elmont, Nassau County. The petitions detailed certain incidents which allegedly occurred on February 19, 2009, on the island of Anguilla.[1] According to the respondents, the appellant pushed Annette to the floor twice, causing her to hurt her back and hit her head. The appellant allegedly was screaming, yelling, and cursing at Annette during the assault. In addition, the appellant allegedly used a glass bowl to strike Andrew on the head, causing injuries. Further, the appellant allegedly chased Aaron with a meat cleaver and threw an ashtray at him, which hit him in the back.

Thereafter, on March 6, 2009, the appellant filed three of her own family offense petitions seeking orders of protection in her favor and against the respondents. The appellant alleged that

---

1. Anguilla is a British dependent territory located in the eastern Carribean (*see* The Government of Anguilla, http://www.gov.ai/anguillafacts.htm [accessed July 19, 2010]).

on or about February 14, 2009, also in Anguilla, the respondents committed the family offenses of, inter alia, aggravated harassment in the second degree, harassment in the first degree, attempted assault, and menacing in the third degree.

During an initial appearance before the Family Court, the appellant's counsel objected to the court's exercise of subject matter jurisdiction because the alleged offenses occurred in Anguilla. The Family Court held that "the fact that this took place in the West Indies is no different from it taking place in Pennsylvania, Virginia, or Vermont. They're [all residents] of Nassau County and they're entitled to protection from future occurrences. Family Orders of Protection . . . are to prevent further hostility and further assault, attempted assault, . . . et cetera."

On June 24, 2009, after a hearing, the Family Court found that the respondents proved by clear and convincing evidence that the appellant had committed certain family offenses against them and granted the respondents' respective petitions. The Family Court also entered three two-year orders of protection on behalf of the respondents and against the appellant. The orders of protection directed the appellant to stay away from each of the respondents and to refrain from assaulting, stalking, and similar conduct. In addition, the Family Court issued three orders of dismissal which dismissed the appellant's three petitions.

The appeals are from the three orders of protection and from the three orders dismissing the appellant's petitions. We affirm.

As a threshold matter, it is evident that the Family Court acquired personal jurisdiction over the appellant, as she appeared before the Family Court without challenging personal jurisdiction. Additionally, the appellant affirmatively sought the entry of orders of protection against the respondents (see Family Ct Act § 167; CPLR 320; cf. Matter of El-Sheemy v El-Sheemy, 35 AD3d 738 [2006] [by appearing in Family Court article 6 proceeding and seeking custody, the mother waived her claim that the Family Court did not acquire personal jurisdiction over her]). Further, venue was appropriate inasmuch as the petitions were filed in the Family Court, Nassau County, the county where the parties resided (see Family Ct Act §§ 174, 818;[2] CPLR 503).

The appellant's contentions provide this Court with an opportunity to address an issue which does not appear to have

---

2. Family Court Act § 818, entitled "Venue," provides:

been previously addressed by an appellate court in this state: the limits of the subject matter jurisdiction of the Family Court with respect to family offenses which occurred outside of the state, and even outside of the country.

The Family Court is a court of limited jurisdiction constrained to exercise only those powers conferred upon it by the State Constitution or by statute (see *Matter of H.M. v E.T.*, 14 NY3d 521 [2010]; *Matter of Johna M.S. v Russell E.S.*, 10 NY3d 364, 366 [2008]). Article VI of the New York State Constitution establishes "[t]he family court of the state of New York" (NY Const, art VI, § 13 [a]) and "enumerates the powers thereof" (*Matter of H.M. v E.T.*, 14 NY3d 521, 526 [2010]). Included within the actions and proceedings over which the Family Court has been given subject matter jurisdiction are family offense proceedings. Pursuant to the New York State Constitution, family offense proceedings are to determine "as may be provided by law . . . crimes and offenses by or against minors or between spouses or between parent and child or between members of the same family or household" (NY Const, art VI, § 13 [b] [7]). In light of the provision stating "as may be provided by law," the grant of jurisdiction to the Family Court over family offense proceedings is permissive and requires legislative action to be implemented.

In that regard, Family Court Act article 8 delineates the parameters of the Family Court's subject matter jurisdiction. The Family Court Act and the Criminal Procedure Law provide the criminal court and the Family Court with "concurrent jurisdiction" over certain enumerated criminal offenses when allegedly committed by one family member against another (see Family Ct Act § 115 [e]; § 812 [1]; CPL 100.07, 530.11 [1]). Thus, while a family member may choose to seek redress for a family offense in the Family Court, a parallel criminal proceeding also is available (see Family Ct Act § 813 [3]). Indeed, the Legislature has specifically authorized a petitioner to commence a family offense "proceeding in either *or* both Family Court and criminal

"Proceedings under this article may be originated in the county in which the act or acts referred to in the petition allegedly occurred or in which the family or household resides or in which any party resides. For the purposes of this section, residence shall include any residential program for victims of domestic violence, as defined in subdivision four of section four hundred fifty-nine-a of the social services law, or facility which provides shelter to homeless persons or families on an emergency or temporary basis."

court" (*People v Wood*, 95 NY2d 509, 512-513 [2000]; *see* Family Ct Act § 813 [3]; CPL 100.07). Moreover, each court has the authority to issue temporary or final orders of protection (*see* Family Ct Act § 813 [2]; § 821-a [2] [b]; §§ 828, 841 [d]; § 842; CPL 530.12).

As relevant here, Family Court Act § 812 (1) provides:

> "Jurisdiction. The family court and the criminal courts shall have concurrent jurisdiction over any proceeding concerning acts which would constitute disorderly conduct, harassment in the first degree, harassment in the second degree, aggravated harassment in the second degree, sexual misconduct, forcible touching, sexual abuse in the third degree, sexual abuse in the second degree as set forth in subdivision one of section 130.60 of the penal law, stalking in the first degree, stalking in the second degree, stalking in the third degree, stalking in the fourth degree, criminal mischief, menacing in the second degree, menacing in the third degree, reckless endangerment, assault in the second degree, assault in the third degree or an attempted assault between spouses or former spouses, or between parent and child or between members of the same family or household except that if the respondent would not be criminally responsible by reason of age pursuant to section 30.00 of the penal law, then the family court shall have exclusive jurisdiction over such proceeding. Notwithstanding a complainant's election to proceed in family court, the criminal court shall not be divested of jurisdiction to hear a family offense proceeding pursuant to this section."

Furthermore, Family Court Act § 812 (2) (b) provides "[t]hat a family court proceeding is a civil proceeding and is for the purpose of attempting to stop the violence, end the family disruption and obtain protection."

Generally, in order to properly interpret a statute, a court should first consider the statute's plain language, which is "the most compelling evidence of the Legislature's intent" (*Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328, 335 [2003]; *see Hudson Val. Oil Heat Council, Inc. v Town of Warwick*, 7 AD3d 572, 574 [2004]). Here, the plain language of Family Court Act § 812 provides that the Family Court has jurisdiction over family offense proceedings where

the petitions allege the commission of certain proscribed acts that occur between spouses or former spouses, or between parent and child or between members of the same family or household.[3] There is no geographic limitation in Family Court Act § 812, or elsewhere in the Family Court Act, as to where a family offense is to have occurred in order to confer subject matter jurisdiction upon the Family Court. Since Family Court Act § 812 is clear on its face, it is arguably unnecessary to consider the legislative history of the statute (*see generally Giblin v Nassau County Med. Ctr.*, 61 NY2d 67, 74 [1984]). However, a historical review of the amendments to Family Court Act § 812 is instructive with respect to the issue presented here, and nothing contained therein negates the jurisdiction of the Family Court over family offenses as provided in Family Court Act § 812.

## History of Article 8

Family Court Act article 8, as enacted in 1962, was intended by the New York State Legislature to provide "practical help" to domestic violence victims through the use of civil proceedings in the Family Court, in lieu of the previous practice of punishing the perpetrators of domestic violence through criminal court proceedings (2d Rep of Joint Legis Comm on Ct Reorganization, 1962 McKinney's Session Laws of NY, at 3444). Essentially, article 8, as originally enacted in 1962, "decriminalized what had heretofore been criminal acts amounting to assault or disorderly conduct perpetrated against certain family members" (Sobie, Practice Commentaries, McKinney's Cons Laws of NY,

---

**3.** In 2008, the Legislature expanded the jurisdiction of the Family Court and criminal court over family offenses by allowing the parties in a family offense proceeding to include certain unrelated persons. Specifically, the Legislature amended Family Court Act article 8 by expanding the definition of "members of the same family or household" to permit persons in an "intimate relationship" to seek an order of protection. The amended statute, Family Court Act § 812 (1) (e), states these persons

> "are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time. Factors the court may consider in determining whether a relationship is an 'intimate relationship' include but are not limited to: the nature or type of relationship, regardless of whether the relationship is sexual in nature; the frequency of interaction between the persons; and the duration of the relationship. Neither a casual acquaintance nor ordinary fraternization between two individuals in business or social contexts shall be deemed to constitute an 'intimate relationship.' " (As amended by L 2008, ch 326, § 7.)

Book 29A, Family Ct Act § 812, at 223 [2010]). The 1962 version of Family Court Act § 812 granted exclusive original jurisdiction to the Family Court over certain specifically enumerated family offenses, including "disorderly conduct or an assault between spouses or between . . . members of the same family or household" (L 1962, ch 686). In addition, the 1962 version of the statute required the criminal court to transfer to the Family Court any cause of action alleging a family offense (*see* L 1962, ch 686, adding Family Ct Act § 813) and the Family Court had the discretionary power to transfer family offense proceedings to the criminal court where a family offense proceeding might be "inappropriate" (L 1962, ch 686, adding Family Ct Act § 814 [a]).

In 1977, the Legislature vastly altered the jurisdiction of the Family Court and the criminal court with regard to family offenses, granting the Family Court and the criminal court "concurrent jurisdiction" (L 1977, ch 449, § 1, amending Family Ct Act § 812 [1]). The 1977 amendments to article 8 included a choice of forum provision that required a complainant to elect to proceed either in an article 8 family offense proceeding or in a criminal court proceeding. The choice of forum provision precluded a complainant from bringing an action based upon the same act(s) in an alternate forum (*see* L 1977, ch 449, § 3, amending Family Ct Act § 821; L 1977, ch 449, § 10, adding CPL 100.07).

In 1978, the Legislature further amended article 8 to include a three-day window whereby complainants, having filed a Family Court petition, or a district attorney, having filed an accusatory instrument in a criminal court, could choose to originate a proceeding in the alternate forum. At the conclusion of this three-day period, or after a finding by a court on the merits, whichever occurred earlier, the complainant's choice of forum became final, barring any subsequent proceeding based upon the same act(s) in an alternate court, and, in effect, ending the concurrent jurisdiction (*see* L 1978, ch 629, § 2, amending Family Ct Act § 812; L 1978, ch 629, § 3, amending Family Ct Act § 821; L 1978, ch 629, § 4, amending CPL 100.07).

The 1977 and 1978 amendments to article 8 were "designed to afford more effective relief to" domestic violence victims (Governor's Mem approving L 1977, ch 449, 1977 McKinney's Session Laws of NY, at 2501). In addition, the amendments were intended to increase the availability of remedies to domestic violence victims by "mak[ing] available the entire range of

criminal sanctions which would have been applicable had the crime not occurred within a family or household" (*id.*). There is no evidence that the Legislature, by enacting concurrent jurisdiction between the Family Court and the criminal court in article 8 proceedings, ever intended to decrease the remedies available to domestic violence victims.

The Legislature made its most recent major amendments to Family Court Act article 8 when it enacted the Family Protection and Domestic Violence Intervention Act of 1994 (hereinafter the 1994 Act), the purpose of which was to establish "stronger and more aggressive court intervention in family offense cases" (Senate Introducer Mem in Support, Bill Jacket, L 1994, ch 222, at 24). The 1994 Act eliminated the three-day choice of forum provision which had caused "victims of family offenses [to be] barred from initiating simultaneous proceedings in the family court and in the criminal court," and had consequently allowed perpetrators of domestic violence to "escape criminal prosecution whenever the victim s[ought] civil redress" (*id.* at 23). The 1994 Act further established "a true concurrent jurisdictional provision, enabling the petitioner to proceed simultaneously in both forums (without precluding the election of only one tribunal)" (Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 812, at 224 [2010]).

In 1999, the Legislature clarified the concurrent jurisdiction of the Family Court and criminal court with respect to family offenses when it amended Family Court Act § 812 and Criminal Procedure Law § 530.11 to state, "[n]otwithstanding a complainant's election to proceed in family court, the criminal court shall not be divested of jurisdiction to hear a family offense proceeding" (L 1999, ch 125, § 3, amending Family Ct Act § 812 [1]; L 1999, ch 125, § 2, amending CPL 530.11 [1]). This amendment was enacted following some confusion about the intent of the 1994 Act, and after one court called for legislative clarification (*see* Senate Mem in Support, 1999 McKinney's Session Laws of NY, at 1590-1591; *see also People v Frison*, NYLJ, Jan. 7, 1999, at 32, col 2; *People v McCoy*, NYLJ, Sept. 25, 1998, at 31, col 4).

By enacting a true concurrent jurisdiction provision, the 1994 and 1999 amendments strengthened the remedies available to domestic violence victims. As with the major amendments enacted by the Legislature in 1977 and 1978, there is no evidence of any legislative intent to lessen the subject matter juris-

diction of the Family Court and reduce the remedies available to domestic violence victims. On the contrary, the legislative history demonstrates the Legislature's desire to expand the jurisdiction of the Family Court with respect to family offenses.

In view of the foregoing discussion of the history of Family Court Act § 812, there is no indication that the Legislature intended to prohibit the Family Court from exercising jurisdiction over family offenses where the alleged acts occurred in another state or country.

As discussed above, the Family Court and the criminal court have concurrent jurisdiction over family offenses. However, a question that arises is whether the geographic or territorial limitation on the jurisdiction of the criminal court (*see generally People v McLaughlin*, 80 NY2d 466, 471 [1992] [stating that "for the State to have criminal jurisdiction, either the alleged conduct or some consequence of it must have occurred within the State"]) also limits the jurisdiction of the Family Court. Criminal Procedure Law § 20.40 (1) (a) provides, in pertinent part, that "[a] person may be convicted in an appropriate criminal court of a particular county, of an offense . . . when [c]onduct occurred within such county sufficient to establish [a]n element of such offense."[4]

The Family Court is not a criminal court. Whereas the criminal court's subject matter jurisdiction over family offenses is limited by geography, there is no statutory provision which states that such a geographic limitation also applies to the Family Court. Although the phrase "concurrent jurisdiction" is left undefined in the Family Court Act, the Criminal Procedure Law, and the CPLR, that phrase has been defined as "[j]urisdiction that might be exercised simultaneously by more than one court over the same subject matter and within the same territory, a litigant having the right to choose the court in which to file the action" (Black's Law Dictionary 928 [9th ed 2009]). Neither Family Court Act § 812 nor the aforementioned ordinary definition of concurrent jurisdiction indicates that concurrent jurisdiction means identical jurisdiction (*but see J.A. v J.C.*, NYLJ, June 25, 2001, at 32, col 6 [Fam Ct, Westchester County] [holding that subject matter jurisdiction of the Family Court over a family offense committed entirely outside of the state is the same as that of the criminal court]). As noted above, noth-

---

4. In addition, Criminal Procedure Law §§ 20.20 and 20.50 deal with the State's geographical jurisdiction over criminal offenses within the state, and localities (cities, towns, and villages), respectively.

ing in the State Constitution, Family Court Act § 812, or the legislative history of Family Court Act article 8 requires the predicate acts of a family offense to have occurred in a particular county, state, or country in order for the Family Court to possess subject matter jurisdiction. Thus, to the extent that the appellant contends that the geographic limitation on the jurisdiction of the criminal court also applies to limit the jurisdiction of the Family Court over family offense proceedings, we hold that contention to be without merit. This holding is in accord with the functions of article 8, which include attempting to stop the violence, ending the family disruption, and obtaining an order of protection (*see* Family Ct Act § 812 [2] [b]).

It should ·be noted that our decision is generally consistent with various decisions of the Family Court (*see E.H. v D.B.*, NYLJ, Aug. 8, 2008, at 28, col 1 [Fam Ct, NY County] [holding that Family Court had jurisdiction over family offense proceeding where alleged acts occurred in the Commonwealth of Pennsylvania]; *Matter of Eileen W. v Mario A.*, 169 Misc 2d 484 [Fam Ct, NY County 1996] [holding that Family Court had jurisdiction over family offense proceeding where alleged act occurred in the State of New Jersey]; *Matter of Pierson v Pierson*, 147 Misc 2d 209 [Fam Ct, Monroe County 1990] [holding that Family Court had jurisdiction over family offense proceeding where alleged acts occurred in the State of Florida]; *but see J.A. v J.C.*, NYLJ, June 25, 2001, at 32, col 6 [declining to find subject matter jurisdiction where alleged family offenses occurred in Commonwealth of Massachusetts and where there were no further threats or suggestion of future contact between parties]). However, to the extent that the above-cited cases rely upon a "minimum contacts analysis" or suggest that a residual injury within this state is necessary in order to confer subject matter jurisdiction upon the Family Court pursuant to New York's long-arm statute (*see* CPLR 302), such reasoning should not be followed. Rather, issues such as the potential for future family offenses to be committed within or without the state, or the consequences of any future family offenses, are properly considered by the Family Court in determining whether the entry of an order of protection is warranted (*see* Family Ct Act § 842).

Accordingly, considering the plain meaning of Family Court Act § 812 and the legislative history of that statute, the Family Court properly exercised jurisdiction over the parties' respective petitions, despite the fact that the family offenses were alleged to have occurred in Anguilla.

In the alternative, the appellant argues that if this Court were to find that the Family Court had jurisdiction over the proceedings, the Family Court was only permitted to enforce an order of protection if one had been entered. Further, the appellant argues that the relevant law of Anguilla should have been considered and applied under the choice of laws doctrine. However, as the appellant concedes, there was no order of protection entered in Anguilla, and therefore there was no need as a matter of comity[5] to apply the laws of Anguilla.

The appellant further argues that the Family Court erred in dismissing her petitions and that the orders of protection which, in effect, excluded her from her home for a period of two years, were unreasonable and punitive. She argues that a limited order of protection would have restored the status quo and returned her to her home.

■ The Family Court properly dismissed the appellant's petitions. Although the three orders which dismissed the appellant's petitions stated the dismissals were due to the appellant's "failure to state a cause of action," those orders also provided that the Family Court dismissed the appellant's petitions following "an examination and inquiry into the facts and circumstances of the case, and after hearing the proofs and testimony offered in relation thereto." Therefore, contrary to the appellant's contentions, the Family Court was not required, inter alia, to accept the appellant's allegations as true and determine whether the facts, as alleged, fit into a cognizable cause of action (*cf. Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Matter of Ramroop v Ramsagar*, 74 AD3d 1208 [2010] [Family Court failed to apply proper standard to respondent's motion to dismiss article 8 proceeding for failure to establish a prima facie case]).

The determination of whether a family offense was committed is a factual issue to be resolved by the Family Court, and

---

5. "The doctrine of comity is not a rule of law, but one of practice, convenience and expediency. It does not of its own force compel a particular course of action. Rather, it is an expression of one State's entirely voluntary decision to defer to the policy of another . . . Today in New York the determination of whether effect is to be given foreign legislation is made by comparing it to our own public policy; and our policy prevails in case of conflict" (*Ehrlich-Bober & Co. v University of Houston*, 49 NY2d 574, 580 [1980] [internal quotation marks and citations omitted]; *see also De Rose v New Jersey Tr. Rail Operations*, 165 AD2d 42, 44-45 [1991]).

that court's determination regarding the credibility of witnesses is entitled to great weight on appeal and will not be disturbed if supported by the record (*see Matter of Luke v Luke*, 72 AD3d 689 [2010]; *Matter of Holder v Francis*, 67 AD3d 679 [2009]; *Matter of Sblendorio v D'Agostino*, 60 AD3d 773 [2009]; *Matter of Fernandez v Pacheco*, 59 AD3d 542, 543 [2009]). Here, the Family Court was presented with conflicting testimony as to whether the respondents, among other things, assaulted or attempted to assault the appellant during the course of the subject incident. The Family Court's determination that the appellant failed to establish that a family offense was committed against her was based upon its assessment of the credibility of the parties, and is supported by the record (*see Matter of Barnes v Barnes*, 54 AD3d 755, 756 [2008]; *Matter of Wilkins v Wilkins*, 47 AD3d 823, 824 [2008]; *Matter of Hall v Hall*, 45 AD3d 842, 843 [2007]). Accordingly, the Family Court properly dismissed the appellant's petitions.

■ Moreover, the Family Court did not improvidently exercise its discretion in entering the three orders of protection, to remain in effect up to and including June 23, 2011, directing the appellant to, inter alia, stay away from the respondents (*see* Family Ct Act § 842). While the orders of protection, in effect, require the appellant to also stay away from her home because the respondents also reside there, those provisions were reasonably necessary to provide meaningful protection and to end the family disruption (*see* Family Ct Act § 812 [2] [b]; § 842; *Matter of Valentin v Carrero*, 12 AD3d 522 [2004] [finding Family Court properly barred petitioner from residing in subject apartment in Brooklyn in order "to stop the violence, end the family disruption and obtain protection"]; *cf. Matter of Gonzalez v Acosta*, 73 AD3d 921 [2010] [finding order of protection directing respondent to stay away from petitioner's church to be necessary]; *Matter of Dell'Isola v Dell'Isola*, 19 AD3d 488, 488-489 [2005] [finding Family Court properly issued order of protection against appellant directing him, among other things, to stay away from the petitioner and the parties' children]).

Finally, the appellant maintains that the Family Court's comments and rulings during the hearing demonstrated its partiality in favor of the respondents and bias against her, as well an adversarial attitude. However, there is no evidence that the Family Court was biased against the appellant and thereby deprived her of a fair hearing (*see Matter of Jeannie B. v Roger D.*, 33 AD3d 994 [2006]; *Matter of Grossman v Grossman*, 238

AD2d 339 [1997]; *Matter of Murdock v Murdock*, 183 AD2d 769 [1992]; *cf. Matter of Carlos P.*, 12 AD3d 679 [2004]; *Matter of Muller v Muller*, 221 AD2d 635, 637 [1995]). Furthermore, the record does not support the appellant's contention that the Family Court displayed an adversarial attitude toward her.

Accordingly, the orders of protection and the orders of dismissal are affirmed.

Covello, J.P., Angiolillo and Sgroi, JJ., concur.

Ordered that the orders of protection and the orders of dismissal are affirmed, without costs or disbursements.